[Crim. No. 2302. Second Appellate District, Division Two.—April 3, 1933.]

THE PEOPLE, Respondent, v. WILLIAM C. WILSON, Appellant.

Donald Mackay for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

ARCHBALD, J., *pro tem.*—A jury having been waived by him, defendant was tried by the court on an information charging grand theft. From a judgment of conviction and from an order denying his motion for a new trial he has appealed.

It is contended that the evidence is insufficient to sustain the judgment in that there was no evidence showing (1) an intent to defraud, (2) the perpetration of an actual fraud, (3) any material false representation made to the complaining witness, (4) that the money was obtained by any false pretenses inducing the owner to part therewith, and, further, that the complaining witness made an independent investigation of his own and did not rely on any representations made by appellant.

A. S. Vaughan, the complaining witness, a man seventy years of age and unemployed, testified that in answering an advertisement to the effect that a man could make from six to seven dollars a day painting awnings he went to the office of one Dietz, a broker on Hollywood Boulevard, Los Angeles, where he met appellant, who arranged to go to Vaughan's home the next evening to talk things over; that appellant came to his home one evening thereafter and said he was making from eight to fifteen dollars a day painting awnings, that he had more work than he could do in Los Angeles and wanted to sell Vaughan an interest in his business, to conduct the same at Long Beach, that he had worked three years developing a secret formula for the waterproofing and painting of awnings and that he would teach the witness all the secrets of the mixture and how to mix and apply the solution, that there was big profit in the work and that the materials did not cost over six or seven per cent of the job done, that Vaughan would soon make back the money he put in, and that any time the latter was not satisfied "that he would take me out with a profit". Wilson asked Vaughan $600 for a one-third interest at first, but later offered to take $500 for it, saying that one Moffitt had paid him $600 for an interest and that he would have to give him back $100 if he sold for that. He finally agreed to take $300 from Vaughan, the balance of $200 to be paid out of the business. Vaughan delivered his check for $250 at the time the agreement was consummated, and later appellant consented to take $45 in payment of the $50 still due on the $300, which $45 Vaughan also paid by check, receiving in return therefor appellant's receipt for $50.

The work in Long Beach started a short time after the contract was executed, with Vaughan, Wilson and apparently

Moffitt as partners. Moffitt showed Vaughan how to apply the mixture, but the latter testified that neither Moffitt (who seemed to know how to mix the solution) nor Wilson ever taught him "all of the secrets of the mixture" used, or in fact any of them. According to Vaughan, the three worked together for a time and then one day Wilson brought a man named Tabler to him, telling him that Tabler was his (Vaughan's) "partner now". Vaughan saw no more of Wilson thereafter, and Moffitt likewise apparently left him. The complaining witness testified that he did not get any money after Tabler came in; that all the work they did was to finish a job they had started before. After Tabler quit a man named McElfish, who roomed in the same home with Wilson at Long Beach and who was given a copy of a supposed formula by Wilson similar to a copy handed by appellant to Vaughan, presented himself and apparently suggested to Vaughan that if they could get any work to do that they do it. Vaughan had previously sewed up an awning and he then got the job of painting it. McElfish mixed the solution and the two did that one job together. Apparently that was the finish of the business. Vaughan testified that he stayed with it about three months and a half, and that during all that time there was taken in the sum of $110, of which he was given $55 by Wilson, but from which he had to deduct the sum of $28.74, paid by him for materials and garage rent. The testimony of two men, Adams and Freeman, who met Wilson in the same way Vaughan did and to both of whom practically the same representations were made and to neither of whom were any secrets of the mixture explained, was introduced to show intent and a plan and system of carrying it into effect. Adams was a partner of Wilson in Los Angeles at the time the latter made the representations as to his earnings from the enterprise, and was working on a job at Grauman's Chinese Theater in Los Angeles when Wilson took Vaughan and his wife there to show them the kind of work he was doing. According to Adams the contract price of the job was $200 and there were four of them working on it, including Wilson and Moffitt. He testified that the job took three weeks and that his share of the earnings was $22 cash and advances amounting to $8 that Wilson had made to him from time to time to pay for carfare and lunches while

he was working. This last evidence was stricken by the trial court as immaterial, for some unaccountable reason, as it would seem to be very material on the question of Wilson's earnings at the time. The latter could not possibly have been making from $8 to $15 per day, as he represented, if a man who had a third interest in his business was making less than $1.70 per day at the same time.

A witness named Newmarch was presented by defendant, who testified that he bought an interest in Wilson's business in Los Angeles for $500 and kept it until trouble with his knee compelled him to stop, when Wilson bought back the interest for $250. He testified that there were several formulas, but that they all amounted to practically the same thing; that Wilson did not give him any formulas, but that being an engineer he did not need one, as after he had worked with Wilson and mixed the solution once or twice he had no use for it; that the proportion varied with the materials used and the nature of the material to which it was applied. He identified a formula introduced as exhibit 10, which he said was the general formula and used on nine-tenths of the work, and which differed somewhat in the proportions used as well as in one ingredient from the copy of the formula given McElfish and Vaughan by Wilson. Neither one would appear on its face to be anything that appellant worked on for three years to develop, as the waterproofing element contained therein consisted of Oronite Waterproofing Compound, which was undoubtedly developed in the laboratories of one of our large oil companies. Both formulas, however, would require some instruction concerning the mixing of the solution before a person who was not a painter could use them.

It appears from the evidence also that in addition to Vaughan there were some ten or more individuals who had interests at different times with Wilson in the business, three of them, including Vaughan, getting in because of the same representations as those made to the complaining witness. It also appears from appellant's testimony that all of these supposed partners were given the secret of the solution and that they were free to use it anywhere and at any time. The court might well have concluded that there was nothing very valuable about the supposed secret formula,

both from the nature of the contents of the mixture and the fact that McElfish was given one by Wilson, as well as from the fact that all of the supposed partners were let into the mystery of the solution without any restrictions on them. It would also seem to be a reasonable conclusion that the representation that there was big money in the business by reason of the expenses being only six to seven per cent of what was taken in on a job was not true, as the percentage shown by the evidence of Vaughan, assuming that he bought all the materials, as compared with what was taken in during the time Wilson was with him, was nearly twenty-five. Appellant urges that such a representation is not one of fact, inasmuch as the business was not established in Long Beach and it would be impossible to tell what could be done in the way of building it up. That would undoubtedly be true so far as the volume of business is concerned, but we think the representation is shown to be false, and must have been made well knowing it could not be true, as the evidence of the plaintiff shows that, taking the respective jobs completed under the leadership and direction of Wilson, the net returns were a mere pittance for the time each partner put in on each job; so that even had they been busy all the time there could not have been "big money" in it, and Vaughan could never have accumulated enough to pay back what he put into the business, or hoped for anything more than an extremely scant living. The same is true also as to the representation that appellant was making in Los Angeles, from $8 to $15 per day, even without the material evidence stricken. There is nothing in the evidence to show that so far as the jobs actually done in Long Beach are concerned they were not taken on the same contract basis as in Los Angeles. That was entirely in Wilson's hands, and it is to be presumed that on each job the margin of profit would be the same in Long Beach as in Los Angeles. At $8 per day, the minimum for each, the total daily earnings of the three so-called partners would have to be $24. The evidence given by Vaughan shows that the total taken in was $110, with at the very least $28.74 expense, or $81.26 net, which would make less than three and one-half days' work for the partnership. The evidence of Vaughan shows that they had some thirteen jobs from

which such return was obtained and that they worked on one job four days and another three. The evidence does not specify the time put in on the other eleven, but some must have been consumed. The only chance that appellant could have to earn the money which he represented he was getting from the business would seem to have been through the selling of interests in the partnership, which, of course, he did not tell Vaughan. The representations made to and relied on by the latter were not opinions of what would happen in the future, except as to the promise to take him out ''at a profit'' if he were not satisfied. As to that the court might well conclude from evidence introduced that it was a promise made without any intention of performance (sec. 1572, subd. 4, Civ. Code); and as to any of the representations not in writing there would seem to be evidence of at least one or more persons as well as corroborating circumstances.

We find no evidence of any independent investigation by Vaughan before going into the business, and it is apparent that he went in relying on the truth of what Wilson had told him concerning it.

■ Nor do we think there was any error in denying appellant's motion for a new trial. If the receipt signed by Vaughan, which appellant's affidavit states he found after the termination of the trial, had been introduced in evidence we fail to see how it would have changed the decision. The affidavit of McElfish was to the effect that he bought a truck, some brushes, paints, etc., from Vaughan for ''$1.00 and other consideration''. Vaughan had previously testified that he did not have possession of a truck at any time. It appears from the evidence that McElfish and Vaughan roomed at the same home in Long Beach, and Vaughan's testimony concerning McElfish came out on the first day of the trial, July 22d. On that day the trial was continued to August 9th and the case was closed August 19th. Wilson must have known at all times whether or not he left a truck in the possession of Vaughan, and under the circumstances no diligence is shown or McElfish could have been produced at the trial. It is noteworthy, however, that the witness Adams testified to using a truck in the Los Angeles business after Wilson left, but that it got to the point where

it would not run and was left at the home of Wilson's father, where it was kept.

Judgment and order affirmed.

Works, P. J., and Stephens, J., concurred.